### In re WYSBACK et al.

### Ex parte LEWIS.

(District Court, D. Massachusetts. September 28, 1923.)

### No. 2038.

1. Aliens ⬥53—Attempting to smuggle other aliens into country not ground for exclusion.

That an alien attempted to illegally smuggle other aliens into the United States is no legal reason for his deportation after a residence in the United States of eight years.

2. Aliens ⬥53—Arrest and order for deportation of resident aliens, because of their return from Canada without inspection, held illegal.

Aliens resident in the United States, who are not "hostile aliens," within the regulations adopted pursuant to Act May 22, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 7628e), are free to go to and return from Canada without passports, and the arrest and an order for deportation of such aliens, because of their return into the United States without inspection, was without warrant of law and void.

Habeas Corpus. On petition of William H. Lewis for writs to secure release of Albert Wysback and Moses Makad from custody under deportation orders. Writs granted.

William H. Lewis, of Boston, Mass., for petitioner.
John W. Schenck, Asst. U. S. Atty., of Boston, Mass., opposed.

LOWELL, District Judge. Albert Wysback and Moses Makad were Syrians, who had been living in the United States for eight or nine years. They had each of them taken out their "first papers" for

naturalization. In October of 1920 they went to Canada in order, as it appears, to bring into the United States two or three Syrians who had come to Canada. They attempted to smuggle these Syrians into the United States, but were arrested in Vermont. They were indicted for conspiracy to evade the immigration laws of the United States, and were tried before a jury in Vermont, but the jury disagreed and the criminal proceedings were nol. prossed. Meantime they were examined before the inspector of immigration at Newport, Vt., and were ordered deported on the ground that they were likely to become public charges and that they had entered the United States without inspection. This order was approved by the Secretary of Labor. The validity of this order is now before the court.

At the hearing before the immigration inspector, Makad testified that he had a fruit store belonging to him and some little property. Wysback testified that he was earning $45 a week. Each of them had supported himself for eight years. No evidence to the contrary was introduced by the United States.

[1] It is evident from the statement of the case that the order of the immigration officials was a gross abuse of the rights of aliens. The attempt to bring aliens into the country illegally is nowhere made a reason for excluding the person making such attempt. The offense which Wysback and Makad committed, if they did commit one, in attempting to smuggle other Syrians into the United States, was tried before a jury, which disagreed, and proceedings against them were then discontinued. This was the only offense which was alleged against them.

[2] It would be a serious defect in the laws of the United States if aliens, who had been self-supporting residents of this country for eight years, could thus be summarily deported, and a court of justice should be astute to discover reasons for not allowing such a result. Luckily, however, the case is not a difficult one in this regard. The only reason for stopping the aliens, except for the alleged criminal conspiracy, which has now been disposed of, was that they did not submit to inspection on coming from Canada into the United States. But there was no law requiring them to submit to inspection. Act May 22, 1918, c. 81, 40 Stat. 559 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 7628e–7628h), which was then in force, required certain aliens to get passports for entering or leaving the United States; but by the regulations adopted under this act—

"no passports or permits to depart from or enter the United States shall be required of persons *other than hostile aliens* traveling between points in the continental United States and points in Canada." A Proclamation, August 8, 1918, Governing the Issuance of Passports and the Granting of Permits to Depart from and Enter the United States, Washington Government Printing Office, 1918, p. 10.

These aliens, being Syrians, were not hostile aliens, and could legally go to Canada and come back without inspection.

While it is true that the decision of the immigration authorities on facts is ordinarily conclusive (U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040) it is also true that, when such decisions are founded on mistakes of law, the court has authority to overrule them.

Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114; Ng Fung Ho v. White, 259 U. S. 276, 284, 42 Sup. Ct. 492, 66 L. Ed. 938; In re O'Sullivan (C. C.) 31 Fed. 447.

In the present case there was no authority whatever for deporting the aliens, who could legally return to the United States without interference by the immigration authorities. The entire proceedings before the immigration inspector in Vermont was without authority and void.

As the proceedings were wholly invalid, it is unnecessary in this case to consider the legal effect of the preposterous finding that aliens who had supported themselves for eight years were likely to become public charges.

Let the writs issue.