OLD COLONY TRUST COMPANY ET AL. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 130.   Argued January 10, 11, 1929.   Reargued April 15, 1929.—
Decided June 3, 1929.

*Mr. Arthur A. Ballantine,* with whom *Mr. George E. Cleary* was on the brief, for Old Colony Trust Company.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Attorney General Mitchell, Assistant Attorney General Willebrandt,* and *Messrs. Sewall Key, J. Louis Monarch,* and *Morton P. Fisher,* Special Assistants to the Attorney General, and *Mr. William E. Davis,* Special Attorney, Bureau of Internal Revenue, were on the briefs, for the Commissioner of Internal Revenue.

*Mr. Warren E. Miller* filed the brief of Mr. James Walton, as *amicus curiæ,* by special leave of Court.

*Messrs. George M. Morris, Hugh Satterlee, Albert L. Hopkins, Louis A. Lecher, Robert N. Miller, Murray M. Shoemaker, Harry C. Weeks, Frederic P. Lee,* and *Ellsworth C. Alvord,* filed a brief as *amici curiæ,* on behalf of the Committee on Federal Taxation of the American Bar Association, by special leave of Court.

*Messrs. W. A. Sutherland* and *Joseph B. Brennan* filed a brief, as *amici curiæ,* by special leave of Court.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

We have before us for consideration two questions certified from the same Circuit Court of Appeals, No. 130 and No. 129. They are presented upon different statements of facts and the cases reach the certifying court in different ways, but the questions are so nearly alike that the certifying judges deemed it convenient to present them in consolidated form. We prefer to separate the questions, discuss and decide No. 130 first, and then consider No. 129.

No. 130 comes here by certificate from the Circuit Court of Appeals for the First Circuit. The action in that court was begun by a petition to review a decision of the United

States Board of Tax Appeals. The petitioners are the executors of the will of William M. Wood, deceased. On June 27, 1925, before Mr. Wood's death, the Commissioner of Internal Revenue notified him by registered mail of the determination of a deficiency in income tax against him for the years 1919 and 1920, under the Revenue Act of 1918. The deficiency was revised by the Commissioner August 18, 1925. An appeal was taken to the Board of Tax Appeals, which was filed October 27, 1925. A hearing before the Board, April 11, 1927, resulted in a decision November 12, 1927. The Board approved the action of the Commissioner and found a deficiency in the federal income tax return of Mr. Wood for the year 1919 of $708,781.93, and for the year 1920 of $350,837.14. The petition for review was perfected December 23, 1927, pursuant to the Revenue Act of 1926, § 283(b), and §§ 1001 to 1005, c. 27, 44 Stat., Part 2, 9, 65, 109, and Rule 38 of the First Circuit Court of Appeals.

The facts certified to us are substantially as follows:

William M. Wood was president of the American Woolen Company during the years 1918, 1919 and 1920. In 1918 he received as salary and commissions from the company $978,725, which he included in his federal income tax return for 1918. In 1919 he received as salary and commissions from the company $548,132.27, which he included in his return for 1919.

August 3, 1916, the American Woolen Company had adopted the following resolution, which was in effect in 1919 and 1920:

"Voted: That this company pay any and all income taxes, State and Federal, that may hereafter become due and payable upon the salaries of all the officers of the company, including the president, William M. Wood; the comptroller, Parry C. Wiggin; the auditor, George R. Lawton; and the following members of the staff, to wit: Frank H. Carpenter, Edwin L. Heath, Samuel R. Haines,

and William M. Lasbury, to the end that said persons and officers shall receive their salaries or other compensation in full without deduction on account of income taxes, State or Federal, which taxes are to be paid out of the treasury of this corporation."

This resolution was amended on March 25, 1918, as follows:

" Voted: That, in referring to the vote passed by this board on August 3, 1916, in reference to income taxes, State and Federal, payable upon the salaries or compensation of the officers and certain employees of this company, the method of computing said taxes shall be as follows, viz:

" ' The difference between what the total amount of his tax would be, including his income from all sources, and the amount of his tax when computed upon his income excluding such compensation or salaries paid by this company.' "

Pursuant to these resolutions, the American Woolen Company paid to the collector of internal revenue Mr. Wood's federal income and surtaxes due to salary and commissions paid him by the company, as follows:

Taxes for 1918 paid in 1919........ $681, 169. 88
Taxes for 1919 paid in 1920...... 351, 179. 27

The decision of the Board of Tax Appeals here sought to be reviewed was that the income taxes of $681,169.88 and $351,179.27 paid by the American Woolen Company for Mr. Wood were additional income to him for the years 1919 and 1920.

The question certified by the Circuit Court of Appeals for answer by this Court is:

" Did the payment by the employer of the income taxes assessable against the employee constitute additional taxable income to such employee?"

The first point presented to us is that of the jurisdiction of this Court to answer the question of law certified. It

requires us to examine the original statute providing for the Board of Tax Appeals under the Revenue Act of 1924, and the amending Act of 1926.

The Board of Tax Appeals, established by § 900 of the Revenue Act of 1924, Tit. IX, c. 234, 43 Stat. 253, 336, was created by Congress to provide taxpayers an opportunity to secure an independent review of the Commissioner of Internal Revenue's determination of additional income and estate taxes by the Board in advance of their paying the tax found by the Commissioner to be due. Before the Act of 1924 the taxpayer could only contest the Commissioner's determination of the amount of the tax after its payment. The Board's duty under the Act of 1924 was to hear, consider and decide whether deficiencies reported by the Commissioner were right.

Section 273 of that Act defined a "deficiency" to be the amount by which the tax imposed exceeded the amount shown by the return of the taxpayer after the return was increased by the amounts previously assessed or disallowed. There was under the Act of 1924 no direct judicial review of the proceedings before the Board of Tax Appeals. But each party had the unhindered right to seek separate action by a court of competent jurisdiction to test the correctness of the Board's action. Such court proceedings were to be begun within one year after the final decision of the Board.

Section 274 (b) provided that if the Board determined there was a deficiency, the amount so determined should be assessed and paid upon notice and demand from the collector. No part of the amount determined as a deficiency by the Commissioner but disallowed as a deficiency by the Board, could be assessed, but the Commissioner was at liberty, notwithstanding the decision of the Board against him, to bring a suit in a proper court against the taxpayer to collect the alleged deficiency.

On the other hand, by § 900 (g) it was provided that in any suit brought by the Commissioner, or by the taxpayer

to recover any amounts paid in pursuance of a decision of the Board, the findings of the Board were *prima. facie* evidence of the facts.

By the Revenue Act of 1926, this procedure was changed and a direct judicial review of the Board's decision was substituted.

The Act of 1926 also enlarged the original jurisdiction of the Board of Tax Appeals to consider deficiencies beyond those shown in the Commissioner's notice, if the Commissioner made such a claim at or before the hearing, § 274(e), and also to determine that the taxpayer not only did not owe the tax but had over paid. Section 284 (e).

The chief change made by the Act of 1926 was the provision for direct judicial review of the Board's decisions by the filing by the Commissioner or the taxpayer of a petition for review in a Circuit Court of Appeals or the Court of Appeals of the District of Columbia under rules adopted by such courts.

It is suggested that the proceedings before the Circuit Courts of Appeals or the District Court of Appeals on a petition to review are not and can not be judicial, for they involve "no case or controversy," and without this a Circuit Court of Appeals, which is a constitutional court (*Ex parte Bakelite Corporation, ante*, p. 438) is incapable of exercising its judicial function. This view of the nature of the proceedings we can not sustain.

The case is analogous to the suits which are lodged in the Circuit Courts of Appeals upon petition or finding of an executive or administrative tribunal. It is not important whether such a proceeding was originally begun by an administrative or executive determination, if when it comes to the court, whether legislative or constitutional, it calls for the exercise of only the judicial power of the court upon which jurisdiction has been conferred by law.

The jurisdiction in this cause is quite like that of Circuit Courts of Appeals in review of orders of the Federal Trade Commission. *Federal Trade Commission* v. *Eastman*, 274 U. S. 623; *Silver Co.* v. *Federal Trade Commission*, 292 Fed. 752. There are other instances of a like kind which can be cited. *United States* v. *Ritchie*, 17 How. 525, 534; *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447, 469; *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 447. See also *Fong Yue Ting* v. *United States*, 149 U. S. 698, 714.

It is not necessary that the proceeding to be judicial should be one entirely *de novo;* it is enough that, before the judgment which must be final has been invoked as an exercise of judicial power, it shall have certain necessary features. What these are has been often declared by this Court. Perhaps the most comprehensive definitions of them are set forth in *Muskrat* v. *United States*, 219 U. S. 346, 356, where this Court entered into the inquiry what was the exercise of judicial power as conferred by the Constitution. There was cited there a definition by Mr. Justice Field, in *Re Pacific Railway Commission*, 32 Fed. 241, 255, which has been generally accepted as accurate. He said:

" The judicial article of the Constitution mentions cases and controversies. The term ' controversies,' if distinguishable at all from ' cases,' is so in that it is less comprehensive than the latter; and includes only suits of a civil nature. *Chisholm* v. *Georgia*, 2 Dall. 431, 432; 1 Tuch. Bl. Comm. App. 420, 421. By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws or treaties of the United

States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication."

In *Osborn* v. *United States Bank,* 9 Wheat. 738, Chief Justice Marshall construed Article III of the Constitution as follows (p. 819):

"This clause enables the judicial department to receive jurisdiction to the full extent of the constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it, by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the constitution declares, that the judicial power shall extend to all cases arising under the constitution, laws and treaties of the United States."

The Circuit Court of Appeals is a constitutional court under the definition of such courts as given in the *Bakelite* case, *supra,* and a case or controversy may come before it, provided it involves neither advisory nor executive action by it.

In the case we have here, there are adverse parties. The United States or its authorized official asserts its right to the payment by a taxpayer of a tax due from him to the Government, and the taxpayer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due. That makes a case or controversy, and the proper disposition of it is the exercise of judicial power. The courts are either the Circuit Court of Appeals or the District of Columbia Court of Appeals. The subject matter of the controversy is the amount of the tax claimed to be due or

refundable and its validity, and the judgment to be rendered is a judicial judgment.

The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided.

It is next suggested that there is no adequate finality provided in respect to the action of these courts. In the first place, it is not necessary, in order to constitute a judicial judgment that there should be both a determination of the rights of the litigants and also power to issue formal execution to carry the judgment into effect, in the way that judgments for money or for the possession of land usually are enforced. A judgment is sometimes regarded as properly enforceable through the executive departments instead of through an award of execution by this Court, where the effect of the judgment is to establish the duty of the department to enforce it. *La Abra Silver Mining Co.* v. *United States,* 175 U. S. 423, 457, 461. The case of *Fidelity National Bank & Trust Co.* v. *Swope,* 274 U. S. 123, 132, shows clearly that there are instances where the award of execution is not an indispensable element of a constitutional case or controversy. In that decision there are collected familiar examples of judicial proceedings resulting in a final adjudication of the rights of litigants without it.

But even if a formal execution be required, we think power to resort to it is clearly shown with respect to the enforcement of the action of the courts here involved by §§ 1001 to 1005.

By the first, the decision of the Board of Tax Appeals rendered after the passage of the Act of 1926 may be reviewed by the Circuit Court of Appeals or the District Court of Appeals if a petition for such review is filed

either by the Commissioner or the taxpayer within six months after the decision is rendered. The courts are to adopt rules for the filing of the petition, the preparation of the record, and the conduct of the proceedings upon such review. The review is not to operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Board, unless a petition for review is filed by the taxpayer, and unless the taxpayer has filed a bond which when enforced will operate finally to settle the rights of the parties as found by the courts.

By §1002, it is provided in what venue the decision may be reviewed. In § 1003, the Circuit Courts of Appeals and the Court of Appeals of the District are given exclusive jurisdiction to review the decisions of the Board and it is declared that their judgments shall be final except that they shall be subject to review by the Supreme Court of the United States, on certificate or by certiorari in the manner provided in § 240 of the Judicial Code as amended, and in such review the courts shall have the power to affirm, or if the decision of the Board is not in accordance with law, to modify or reverse the decision of the Board, with or without remanding the case for a rehearing as justice may require.

By § 1004, the same courts are given power to impose damages in any case where the decision of the Board is affirmed, and it appears that the petition was filed merely for delay.

By § 1005, the decision of the Board is to become final in respect to all the numerous instances which in the course of the review may naturally end further litigation. In the provisions of these sections, the legislation prescribes minute details for the enforcement of the judgments that are the result of these petitions for review in the several courts vested with jurisdiction over them.

The complete purpose of Congress to provide a final adjudication in such proceedings, binding all the parties, is manifest and demonstrates the unsoundness of the objection.

We have before us, however, for actual inquiry a case different from one just considered in the regular course of a petition for review of a decision of the Board, begun and decided all after the enactment of the Act of 1926. It is one in which the appeal to the Board of Tax Appeals had been taken, but the appeal had not been decided by the Board before the passage of the Act of 1926. That presents what involves a troublesome exception or duplication in the procedure. This occurs because of the last excepting clause of § 283 (b) of the amending Act of 1926, which is as follows:

" If before the enactment of this Act any person has appealed to the Board of Tax Appeals under subdivision (a) of Section 274 of the Revenue Act of 1924 . . . and the appeal is pending before the Board at the time of the enactment of this Act, the Board shall have jurisdiction of the appeal. In all such cases the powers, duties, rights, and privileges of the Commissioner and of the person who has brought the appeal, and the jurisdiction of the Board and of the courts, shall be determined, and the computation of the tax shall be made in the same manner as provided in subdivision (a) of this section, except as provided in subdivision (j) of this section and except that the person liable for the tax shall not be subject to the provisions of subdivision (d) of Section 284."

The provisions of § 284 (d) are those which deny to the taxpayer the power to bring any suit for the recovery of the tax after he has adopted the procedure of appealing to the Board of Tax Appeals or to the Circuit Court of Appeals.

By this last exception in § 283 (b), there seems still open to the taxpayers who have filed a petition under the

law of 1924 and have not had a decision by the Board before the enactment of the law of 1926, the right to pay the tax and sue for a refund in the proper District Court (Par. 20 of § 24 of the Judicial Code, as amended by § 1310 (c), c. 136, 42 Stat. 311, U. S. Code, Title 28, § 41). *Emery* v. *United States*, 27 F. (2d) 992, and *Old Colony R. R.* v. *United States*, 27 F. (2d) 994, hold that the petitioner still retains this earlier remedy.

The truth seems to be that in making provision to render conclusive judgments on petitions for review in the Circuit Courts of Appeals, Congress was not willing in cases where the Board of Tax Appeals had not decided the issue before the passage of the Act of 1926, to cut off the taxpayer from paying the tax and suing for a refund in the proper District Court. But the apparent conflict in such cases can be easily resolved by the use of the principles of *res judicata.* If both remedies are pursued, the one in a District Court for refund, and the other on a petition for review in the Circuit Court of Appeals, the judgment which is first rendered will then put an end to the questions involved and in effect make all proceedings in the other court of no avail. Whichever judgment is first in time is necessarily final to the extent to which it becomes a judgment. There is no reason, therefore, in the case before us to decline to take jurisdiction. See *Bryar* v. *Campbell,* 177 U. S. 649; *Kline* v. *Burke Construction Co.,* 260 U. S. 226, 230; *Stanton* v. *Embrey,* 93 U. S. 548, 554.

Second. The jurisdiction here is based upon the certificate of a question of law. That is whether the payment by the employer of the income taxes assessed against the employee constitutes additional returnable taxable income to such employee. The certification of such a question by the Circuit Court of Appeals is an invocation

of the appellate jurisdiction of this Court and therefore within the Constitution.

Third. Coming now to the merits of this case, we think the question presented is whether a taxpayer, having induced a third person to pay his income tax or having acquiesced in such payment as made in discharge of an obligation to him, may avoid the making of a return thereof and the payment of a corresponding tax. We think he may not do so. The payment of the tax by the employers was in consideration of the services rendered by the employee and was a gain derived by the employee from his labor. The form of the payment is expressly declared to make no difference. Section 213, Revenue Act of 1918, c. 18, 40 Stat. 1065. It is therefore immaterial that the taxes were directly paid over to the Government. The discharge by a third person of an obligation to him is equivalent to receipt by the person taxed. The certificate shows that the taxes were imposed upon the employee, that the taxes were actually paid by the employer and that the employee entered upon his duties in the years in question under the express agreement that his income taxes would be paid by his employer. This is evidenced by the terms of the resolution passed August 3, 1916, more than one year prior to the year in which the taxes were imposed. The taxes were paid upon a valuable consideration, namely, the services rendered by the employee and as part of the compensation therefor. We think therefore that the payment constituted income to the employee.

This result is sustained by many decisions. *Providence & Worcester R. R. Co.,* 5 B. T. A. 1186; *Houston Belt & Terminal Ry. Co.* v. *Commissioner,* 6 B. T. A. 1364; *West End Street Railway Co.* v. *Malley,* 246 Fed. 625; *Rennselaer & S. R. Co.* v. *Irwin,* 249 Fed. 726; *Northern R.*

*Co. of New Jersey* v. *Lowe,* 250 Fed. 856; *Houston Belt & Terminal Ry. Co.* v. *United States,* 250 Fed. 1; *Blalock* v. *Georgia Ry. & Electric Co.,* 246 Fed. 387; *Hamilton* v. *Kentucky & Indiana Terminal R. R.* 289 Fed. 20; *American Telegraph & Cable Co.* v. *United States,* 61 Ct. Cl. 326; *United States* v. *Western Union Telegraph Co.,* 19 Fed. (2d) 157; *Estate of Levalley,* 191 Wis. 356; *Estate of Irwin,* 196 Cal. 366.

Nor can it be argued that the payment of the tax in No. 130 was a gift. The payment for services, even though entirely voluntary, was nevertheless compensation within the statute. This is shown by the case of *Noel* v. *Parrott,* 15 F. (2d) 669. There it was resolved that a gratuitous appropriation equal in amount to $3 per share on the outstanding stock of the company be set aside out of the assets for distribution to certain officers and employees of the company and that the executive committee be authorized to make such distribution as they deemed wise and proper. The executive committee gave $35,000 to be paid to the plaintiff taxpayer. The court said, p. 672:

" In no view of the evidence, therefore, can the $35,000 be regarded as a gift. It was either compensation for services rendered, or a gain or profit derived from the sale of the stock of the corporation, or both; and, in any view, it was taxable as income."

It is next argued against the payment of this tax that if these payments by the employer constitute income to the employee, the employer will be called upon to pay the tax imposed upon this additional income, and that the payment of the additional tax will create further income which will in turn be subject to tax, with the result that there would be a tax upon a tax. This it is urged is the result of the Government's theory, when carried to its

logical conclusion, and results in an absurdity which Congress could not have contemplated.

In the first place, no attempt has been made by the Treasury to collect further taxes, upon the theory that the payment of the additional taxes creates further income, and the question of a tax upon a tax was not before the Circuit Court of Appeals and has not been certified to this Court. We can settle questions of that sort when an attempt to impose a tax upon a tax is undertaken, but not now. *United States* v. *Sullivan*, 274 U. S. 259, 264; *Yazoo & Mississippi Valley R. R.* v. *Jackson Vinegar Co.*, 226 U. S. 217, 219. It is not, therefore, necessary to answer the argument based upon an algebraic formula to reach the amount of taxes due. The question in this case is, " Did the payment by the employer of the income taxes assessable against the employee constitute additional taxable income to such employee? " The answer must be " Yes."

Separate opinion of MR. JUSTICE McREYNOLDS.

The Board of Tax Appeals belongs to the executive department of the Government and performs administrative functions—the assessment of taxes. The statute attempts to grant a broad appeal to the courts and directs them to reconsider the Board's action—to do or to say what it should have done. This enjoins the use of executive power, not judicial. The duty thus imposed upon the courts is wholly different from that which arises upon the filing of a petition to annul or enforce the action of the Interstate Commerce Commission or the Federal Trade Commission.

I think the Circuit Court of Appeals was without jurisdiction.