**McMURRAY v. REYNOLDS, Collector of Internal Revenue.**

No. 1903.

District Court, D. Wyoming.

Feb. 8, 1930.

Corthell, McCullough & Corthell, of Laramie, Wyo., for plaintiff.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

KENNEDY, District Judge.

This is an action to recover income taxes by the heir of one who had paid the same under protest. The petition is challenged by a general demurrer, upon presentation of which the matter is before the court at the present time.

An extended review of the allegations of the petition would seem to be unnecessary, inasmuch as counsel agree that there is presented a concrete point of law.

Briefly stated, the situation is substantially as follows: Will McMurray, father of the plaintiff, and of whom the plaintiff is the sole heir at law, had an interest in a prospective oil field in this state, having acquired the same through one Armstrong. Some time prior to the year for which the additional income taxes were subsequently levied and paid under protest, an agreement for the promotion and development of the oil field was entered into with an oil company, under which agreement the company was to advance all the funds necessary for the promotion and development of the property, and that such expense would be borne solely by the company, unless oil or gas were produced. Upon the happening of such contingency, however, the expense of such promotion and development would be borne upon the basis of 60 per cent. to the company and 40 per cent. to Armstrong, and that said 40 per cent. of such expense should be charged upon the books of the company against Armstrong until it, together with the 60 per cent. to be borne by the developing company, should liquidate the entire cost of the development. In addition, it was provided that Armstrong's share of such expense should bear interest at the rate of 6 per cent. per annum. The development of the property proceeded, resulting in the dis-

covery of oil in substantially large quantities, and the arrangement between the parties was carried into effect by the company charging Armstrong, as fast as the proceeds from the sale of the product came in, with his 40 per cent. of the cost of the development. The condition so prevailed in 1920, concerning which the first controversy over income tax arises, that a considerable portion of the product from the oil field had been marketed, but not a sufficient amount to cover the expense of the development.

McMurray, owner of a portion of the original Armstrong interest, made his return for income taxes for the year 1920 during the following year. In 1926 the Commissioner of Internal Revenue determined an additional income tax against McMurray for 1920 in a sum exceeding $40,000. Thereafter an additional determination and demand for taxes in the same manner and for the same reasons was made by the Commissioner touching the years 1922 and 1924, approximating $2,300. These two sets of taxes, demanded and paid under a threat of distraint, constitute the basis of the two causes of action set forth in the petition. Upon this summarized set-up of the contents of the petition to which the demurrer is directed, it is agreed by counsel for the defendant that the taxes were determined, demanded, and collected by the government upon the theory that the amounts charged by the producing company for the years 1920, 1922, and 1924, upon the basis of the 40 per cent. of the cost of development, were income, and entitled to bear the proportional share of tax authorized by the revenue laws. It is contended by the plaintiff, who seeks to recover such payments, that these sums were not income within the purview of the Income Tax Act, and therefore not taxable.

The solution of the question is surrounded by the usual difficulties appearing in nearly all income tax cases which find their way into the courts. It is more or less of a favorite pastime for tax experts and counsel alike to theorize "ad infinitum" upon a helpless court. Counsel on both sides have cited numerous cases in carefully prepared memorandum briefs, but in the end seem to be in hopeless conflict as to the rules which should prevail in the disposition of the question at hand, each contending that the authorities of the other are not in point, in which respect the court is inclined to agree with both. Except for a natural inclination to record my reasons for a judicial decision and the oft-repeated suggestion of appellate courts that a trial court should so speak in matters

of consequence coming before it, this is one case which I would be inclined to decide without comment, having the fullest assurance that the cause will find its way into the higher courts, where the more important and decisive round of battle will be fought. In line, therefore with the discharge of duty under a principle which probably ought not to be set aside in this particular case, I will proceed to an expression of views.

It seems to be conceded that the detering factor in the case is as to whether or not the property purported to be assessed by the Commissioner is income within the scope and purview of the various income tax laws applicable thereto. Sections 213 of the Revenue Act of 1918 (40 Stat. 1065) 1921 (42 Stat. 237) and 1924 (43 Stat. 267), which I take it are synonymous, read as follows:

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service ° * ° of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The regulations of the Department throw some light upon an angle of the question surrounding the admitted fact that the proceeds or moneys here attempted to be taxed did not come into the possession of the taxpayer, nor were they subject to his control. In Burns v. Commissioner, 31 F.(2d) 399, at page 401 (C. C. A. 5th), the court says:

"(4) The petitioners also contend that the Board of Tax Appeals erred in charging them with income from salary and commissions in an amount in excess of the amount actually received by them during the tax year. Article 53 of Regulations 45 provides that 'income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to the tax for the year during which it is so credited or set apart, although not actually reduced to possession,' is taxable for the year during which it was so credited or set apart. The compensation of the petitioners was credited to them during the tax year 1920, without substantial limitation or re-

striction as to time, manner, or condition upon which payment was to be made, and might have been drawn out by them at any time during the year after it was so credited. The fact that it was not drawn out in part is of no importance in considering the incidence of the tax."

In some respects, the property or moneys here attempted to be taxed would not seem to satisfy this rule, in that the accruals from production during the years in controversy could not under the promotion agreement have been drawn out by the taxpayer during the years for which said amounts were taxed nor at any time thereafter. Such funds were at all times subject to the liquidation of the expense of promotion and development.

Another element which would seem to distinguish this case from some of those cited by counsel for defendant, is that there is no agreement in the promotion contract binding the taxpayer to pay any amount of money unless it should be realized by his coadventurer through the discovery and marketing of oil and gas. It would therefore seem to be distinguishable from the case of William B. Grise, 6 B. T. A. 743, where a physician bought into a professional partnership and gave notes for the same, with an agreement that they should be paid out of his share of the partnership earnings. Neither does the case of Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, seem to aid much in the solution of the problem here. There the president of a corporation was by a resolution of the board of directors relieved of the payment of his income taxes which the corporation assumed and agreed to pay. The Supreme Court there held that this amount was properly a part of his income, and as such taxable.

If the court may be permitted to theorize, the question suggests itself as to what would have been the situation concerning taxation if during the year 1920, for example, a considerable amount had been realized from the sale of production and charged against the taxpayer's 40 per cent., but with not all of the development expense paid, and the oil property had at that time developed into a loser, so that such expense never would or could be liquidated. Could it be contended under such circumstances that, regardless of the fact that the taxpayer never received a dollar from the production of oil on the land, and that it never could return to him any profits or returns in any way, that the moneys charged against him upon the books

of the developing company as his 40 per cent. of the developing expenses were nevertheless income within the sense of the Revenue Act? If it can be so held, and the taxpayer had no other property, then he would be compelled to pay income taxes upon something which he never received, or never in the nature of things could receive, and out of which in no way could he return to the government its share in the nature of a tax, in addition to the fact that he was physically unable to pay. If this were the situation, I am inclined to believe all would agree that under such circumstances such moneys and proceeds could not be considered as income, or, if so considered, it would be the height of injustice to levy a tax upon them.

Are we therefore to assume that there is such a thing in the law as applied to income taxes that at one time something is not income and yet at another time it is income, to be determined by the happening of future contingencies, and the levying of the tax to be deferred until such contingency happens either one way or the other. This is mentioned for the reason that it is apparent, from the statement of facts found in the petition in this case, that no effort was apparently made to levy the tax here involved until after the enterprise had become an assured success and development expense fully liquidated. Whatever the rule is in regard to what constitutes income, I think it should be determinable upon the conditions and the circumstances which surround the transaction immediately at the close of the taxable year. If it then is determinable as income, it is likewise taxable; if it is not then determinable as income, it is not taxable, and cannot, on account of conditions growing out of future contingencies, be made taxable.

A and B acquire a race horse upon the basis of, respectively, 60 and 40 per cent. For a time the horse runs in a pasture, producing no income. A says to B, I agree to take this race horse and put him in condition to enter the various racing circuits of the country, and, after all expenses of conditioning, maintaining, and operating the horse as a race horse have been fully paid, the profits will be divided in the proportion as our respective interests in the horse appear. At the end of the first year, the expense of conditioning, maintaining, and operating the horse was $10,000. The receipts from the earnings of the race horse for that year were $8,000. Could it be contended that 40 per cent. of the $8,000, which were earned by the horse, was income to the man who

owned the 40 per cent.? If the example be fallacious in its application to the case at bar, I have not been able to discover the fallacy.

This court is not concerned in the matter of seeking to discover some way in which it may be possible to determine how the government may recover some taxes which otherwise might be lost. The court is interested solely in determining whether or not property is taxable under the law. It is conceivable, of course, that Congress may have omitted something from its tax schedules, although it has not been called upon to assume a large burden of criticism upon this ground. An example of what is meant seems to be found in the case of Tenant v. Smith, L. R. A. C. (1892) 150, decided by the English courts, in which it was attempted to tax as income the value of the rent of premises which were granted free to the occupant of a bank house. What such occupant received was undoubtedly gain to him and of considerable advantage, but it was not income within the legal sense of that term. As one of the lords expressed it: "It saves the appellant from the expenditure of income on house rent, but it is not in itself income."

Great stress is laid by counsel for defendant upon the proposition that theoretically oil wells and oil developments are in a peculiar class to be regulated for taxation purposes upon the basis of cost of development computable as capital expenditures and not deductible as current expenses. Such a regulation and rule is clearly recognized by the courts in numerous instances, and fixed standards are indulged and permitted for taxation purposes. Whatever may be the rule in regard to computations of this character, I have not been able to bring myself to a different conclusion than that, unless such standards of computation were available and permissible at the close of the years 1920, 1922, and 1924 as applied to the particular taxpayer here concerned, and as directed to the funds to which the tax is here sought to be applied, they are not applicable to this situation. I am not concerned with any theory as to how a decision may affect the company which was here developing the property, or how it may affect the party from whom McMurray received his interest in the property, or whether or not, technically in the light of subsequent events, these amounts may have turned out to be of advantage to the taxpayer, but solely in determining, as my attention is directed to the point, as to whether or not these amounts were determinable as income at the end of the taxable years for which the government has purported to levy a tax. I think that this is the determining feature in the case, and, if it could not have been determined in the affirmative finally and conclusively at the close of the respective years, then it is not income within the scope of the Revenue Acts.

This rather cursory analysis of the problem leads me to the conclusion that the demurrer to the petition must be overruled, and an order may be entered accordingly, giving the defendant 30 days within which to answer, if he may be so advised, and reserving to him proper exceptions in the premises.