FRANK TURNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55190. Promulgated May 11, 1933.

*Jefferson Armstrong*, Esq., and *W. D. Zirkle*, C. P. A., for the petitioner.

*Philip A. Bayer*, Esq., for the respondent.

## OPINION.

GOODRICH: The sole issue here is, Who was the taxable recipient of the dividends paid upon the stock deposited by Turner under the separation agreement, or, in other words, who was the owner of the stock? Petitioner contends that the stock belonged to the trust, in fact, was the corpus of the trust, and, consequently, that the dividends thereon, at least that part of them paid to Mary Turner, should be taxed to the trust. Respondent determined and maintains that the stock was Turner's, and the dividends likewise. Since the parties agree that everything concerning the deposit of the stock was done in accordance with the agreement and that the ownership of the stock will be disclosed by and must be determined under the provisions of the agreement, we need not look beyond it to discover their

intentions respecting the stock, the effect of their acts, and the determination of the issue herein.

After a careful analysis of the instrument it is our opinion that the stock was Turner's. The agreement clearly indicates that it was not intended that ownership of the stock should be transferred to the trustees or that the corpus of the trust, so far as Turner was concerned, should be anything other than $400,000 in cash. The provisions relating to deposit of the stock, and the acts done in accordance therewith, were no more than the usual posting of collateral to assure the performance of the obligations assumed by one of the contracting parties, and neither evidenced the intention nor accomplished the result of irrevocably divesting Turner of title to his property. Moreover, we doubt whether Turner would have been permitted to accomplish that result had he so desired, for at that time the stock was covered by an irrevocable option of purchase previously given by Turner to the General Motors Corporation and perhaps he was not free to alienate it. But, aside from that, the instrument, by frequent reiteration, makes indisputable the fact that its main purpose, from the standpoint of Mary Turner, was to insure to her a stated annual income for life, derived from a fund of $400,000 to be set up by cash for that purpose, and hers to dispose of upon her death. The promise on the part of Turner to accomplish that purpose furnished the consideration for the relinquishment by his wife of her marital property rights.

The corpus of the trust in the first instance was to be the money, not the stock, as is shown by the following language of the contract:

> As and when received by them from (Turner) the trustees shall control and possess said fund of $400,000.00 for and during the life of (Mary Turner) BUT UPON TRUST NEVERTHELESS, and *wholly as the corpus of the trust* hereby created. [Italics supplied.]

As we see it, the deposit of the stock was required only as collateral to secure the supplying of the fund and the payment of the annual income to Mrs. Turner until such time as it might be derived from the invested corpus of the trust—a view which is borne out by the provisions relating to the deposit of further securities " *as additional collateral* " in event of a shrinkage in value of the stock. There was nothing unusual in supplying the trustees with power of attorney to transfer the stock (whether they used it is not disclosed) and with a dividend order. Those things, in view of the provisions relating to redemption and recovery of the stock, do not evidence an irrevocable transfer of ownership. We conclude that the stock remained Turner's and the dividends paid thereon belong to him. Cf. *Frank P. Welch*, 12 B.T.A. 800. Nor can he escape tax on that part of the dividends paid by the trustees to Mary Turner. He was personally obligated to supply her with an income each year, and it is

immaterial whether that obligation was discharged by payment directly by him or by the trustees on his behalf. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

SMITH, dissenting: I believe that the majority opinion reaches an erroneous result, largely through its failure to give a proper construction to the trust agreement. In substance, the opinion holds that the agreement was nothing more than a promise on the part of the petitioner to provide an annual income of $20,000 for his wife and, at some future time, to create a trust fund of $400,000 for this purpose and immediately to post collateral in the form of certain shares of stock as security for such promises.

By its express terms, however, the agreement is declared to be a final and definite settlement of all property matters between the petitioner and his wife. It declares primarily for the establishment of an irrevocable trust fund of $400,000 out of which the income to the extent of $20,000 annually was to be paid to the petitioner's wife and the balance, if any, paid to the petitioner. The principal sum was to be disposed of ultimately by the petitioner's wife and on no condition was any part of it ever to revert to the petitioner. If, under this agreement, the petitioner had deposited the $400,000 cash with the trustees, clearly he could not be held taxable upon the income thereof except as to such part of the income as was payable to him as a beneficiary of the trust. Section 161 of the Revenue Act of 1928; *S. A. Lynch*, 23 B.T.A. 435. However, in accordance with a further express provision of the agreement, the petitioner, instead of putting up the $400,000 in cash, deposited with the trustees " in lieu thereof " certain securities of a value in excess of that amount, which securities were to be returned to him upon his payment of $400,000 in cash to the trustees and which, in the meantime, were to be held " IN TRUST, NEVERTHELESS," for the same "uses and purposes " and subject to the same " conditions and restrictions " as would have been the $400,000 in cash. Can it be said that the provision of the trust instrument giving the petitioner the right, or his exercise of the right, to substitute securities of equal or greater value for cash as the trust corpus, rendered the trust invalid, or, as stated in the majority opinion, can it be said that " the provisions relating to deposit of the stock, and the acts done in accordance therewith, were no more than the usual posting of collateral to assure the performance of the obligations assumed by one of the contracting parties, and neither evidenced the intention nor accomplished the result of irrevocably divesting Turner of title to his property "?

It seems to me that these securities were clearly impressed with the trust and were no longer the property of the petitioner. At most, the petitioner merely possessed the right to reacquire them upon payment of $400,000 in cash to the trustees. I think it error to hold that the petitioner is taxable upon the income of such property as the owner thereof.