**KANSAS CITY SOUTHERN RY. CO. et al.**
**v. COMMISSIONER OF INTERNAL**
**REVENUE.**
No. 10083.

Circuit Court of Appeals, Eighth Circuit.
Feb. 14, 1935.

Samuel W. Moore, of New York City (Frank H. Moore, of Kansas City, Mo., and Fred R. Angevine, of New York City, on the brief), for petitioners.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals redetermining deficiencies in income taxes of the petitioners for the calendar year 1920 and the calendar years 1922 to 1925, inclusive. (22 B. T. A. 949.) The petitioners are the Kansas City Southern Railway Company and its wholly owned subsidiaries, and will be referred to in this opinion as "the taxpayer."

The questions presented by the petition may be stated, briefly, as follows:

1. Should the taxpayer's deduction for maintenance expenses for the year 1920 be reduced in the amount of $429,821.89 on the ground that that amount was used by the taxpayer for the restoration of undermaintenance sustained during the period of federal control (December 31, 1917, to March 1, 1920) and was covered by a subsequent allowance made by the Director General on account of undermaintenance?

2. Should the taxpayer's deduction for expenses for the year 1920 be reduced by the sum of $250,968.75 because the materials and supplies which it had received from the Director General on March 1, 1920 (to replace similar materials and supplies turned over to him by it on December 31, 1917), were, when used up in 1920, charged to operating expenses at their cost to the Director General rather than at the cost to the taxpayer in 1917 of the materials and supplies for which they were substituted?

3. Should the amount of actual or of estimated accrued revenue for the month of December, 1920, be included in the taxable income for that year?

4. Should contributions to the firemen's and policemen's balls and the National Guard of Missouri be deducted from the taxpayer's income for the years 1922 to 1925, inclusive, as ordinary and necessary business expenses?

5. Did the Board of Tax Appeals err in denying the petitions of the taxpayer for a reopening of the proceedings and a determination of the sufficiency of the waiver of its right to appeal to the Board with respect to certain items of the deficiencies determined by the Commissioner, which waiver contained a consent to an assessment of $238,478.03 of the asserted deficiencies?

These questions will be discussed in their order under the following headings:

1. Restoration of undermaintenance.
2. Materials and supplies.
3. Overlapping item.
4. Contributions.
5. Reopening.

### Restoration of Undermaintenance.

Section 234 (a) of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1077, authorized the taxpayer, in computing its taxable income, to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *"

The Director General took over the property of the taxpayer on January 1, 1918, and operated the property until March 1, 1920, when it was turned back to the taxpayer. It sought from the Director General an allowance of $1,710,038 on account of undermaintenance sustained during the period of federal control. Of this amount, $553,408 was asked for undermaintenance of way and structures, and $1,156,630 for undermaintenance of equipment. In its final settlement with the Director General, $809,773.83 was credited to the taxpayer on account of undermaintenance of way and structures. No amount was allowed or credited on account of undermaintenance of equipment, and the Director General did not concede that there was any such under-

maintenance. From March 1, 1920, the time when its property was restored to it, to December 31, 1920, the taxpayer expended, on account of maintenance of way and structures, $2,535,786.12, and on account of maintenance of equipment, $3,494,811.24, or a total of $6,030,597.36, all of which was charged to maintenance expense on its books of account and deducted from its gross income in its tax return for the year 1920 as ordinary and necessary expenses.

The Commissioner disallowed the deductions so claimed to the extent of $809,773.83, the amount allowed to the taxpayer by the Director General on account of undermaintenance of way and structures. This was done upon the ground that to that extent the taxpayer had been reimbursed by the government for undermaintenance sustained during the period of federal control. Upon review, the Board of Tax Appeals found that the taxpayer, during the year 1920, had expended $429,821.89 for the restoration of undermaintenance sustained during the control period, for which it was entitled to reimbursement by the Director General, and was later reimbursed. The Board reduced the deduction as claimed by the taxpayer by that amount. The basis for the Board's conclusion was this: It found that the taxpayer's expenses for the maintenance of way and structures during 1920 were $216,295.54 less than normal, indicating that undermaintenance or deferred maintenance of way and structures was greater December 31, 1920, than it was on March 1, 1920; that the taxpayer expended for the maintenance of equipment $646,117.43 more than was normal; and that therefore the difference between the amount by which ways and structures were undermaintained and the amount by which equipment was overmaintained, or $429,821.89, was to be regarded as the amount by which undermaintenance sustained during the period of federal control was restored during the year 1920.

Since the findings of the Board and the evidence upon which they were based show that undermaintenance of way and structures was increased in 1920, instead of being restored, the taxpayer clearly expended nothing on that account for which it was reimbursed by the Director General, and all expenditures that were made for maintenance of way and structures during 1920 were from the funds of the taxpayer. The allowance made by the Director General was a reserve for the restoration of under-

maintenance of way and structures, Commissioner v. Norfolk & Southern R. Co. (C. C. A. 4) 63 F.(2d) 304, 306; Southern Railway Co. v. Commissioner (C. C. A. 4) 74 F.(2d) 887 (opinion filed January 8, 1935), but there was no restoration during 1920, and the reserve remained intact at the end of the year. Had undermaintenance of equipment during federal control been conceded or proved, and had an allowance been made by the government on that account, there would be a foundation for the claim that to the extent of $646,117.43, the amount by which the equipment of the taxpayer was found to have been overmaintained in 1920, there had been a restoration of the undermaintenance of equipment sustained during the federal control period; but, since there was no evidence of undermaintenance of equipment during that period, and no allowance therefor, all sums expended by it on that account were its own funds.

Conceding, therefore, that the applicable rule is, as the government claims, namely, that the taxpayer "should not be allowed any deduction for the expense of restoring undermaintenance in the year in which the undermaintenance was restored, when the cost of restoring it is borne by the Director General," New York, C. & St. L. R. R. Co. v. Helvering, 63 App. D. C. 247, 71 F.(2d) 956, 959, it clearly appears that this taxpayer was entitled to the full deduction claimed, no undermaintenance having been restored in 1920 the expense of which was to be borne by the Director General or paid out of any allowance made by him. Tunnel R. R. of St. Louis v. Commissioner (C. C. A. 8) 61 F.(2d) 166, 170; Commissioner v. Norfolk Southern R. Co. (C. C. A. 4) 63 F. (2d) 304, supra; Chicago & N. W. Ry. Co. v. Commissioner (C. C. A. 7) 66 F.(2d) 61; New York, C. & St. L. R. R. Co. v. Helvering, supra; Southern Railway Co. v. Commissioner (C. C. A. 4) 74 F.(2d) 887, supra.

### Materials and Supplies.

On December 31, 1917, the taxpayer turned over to the Director General certain materials and supplies carried on its books at a value of $1,170,102.92. On March 1, 1920, the Director General turned back to the taxpayer similar materials and supplies, equal in quantity, quality, and usefulness, which were carried on its books at March 1, 1920, values, which exceeded the values of the materials and supplies originally turned over by the taxpayer. The materials and supplies so received from the Di-

rector General were used up by the taxpayer in 1920, and charged to expenses and betterments at the March 1, 1920, values. The Commissioner held that the cost of such supplies and materials so used up by the taxpayer in 1920 was the book value as of December 31, 1917, and disallowed deductions to the extent of the difference between the 1917 and the 1920 values, which is conceded to be $250,968.75. The Board sustained the Commissioner.

We are satisfied that the 1917 inventory value of the materials and supplies which were restored in kind on the termination of federal control determined the deduction the petitioner was entitled to take for the expenditure of the substituted items. The substitution was of things, and not of value. The using up of a $2 1920 government shovel, which had been substituted for a $1 1917 railway shovel, caused a deductible loss to the taxpayer of $1, not $2. On this point, see Terminal Railroad Association of St. Louis v. Commissioner, 17 B. T. A. 1135; Missouri Pac. R. R. Co. v. Commissioner, 22 B. T. A. 267; Norfolk Southern R. R. Co. v. Commissioner, 22 B. T. A. 302; Baltimore & Ohio Railroad Co. v. Commissioner, 30 B. T. A. 194.

## Overlapping Item.

In December, 1920, the taxpayer underestimated its revenues for that month to the extent of $282,555.66. This underestimate was made in good faith following a long continued practice of estimating revenues, which, by their nature, could not be determined at the end of any one month with any degree of exactness. The amount by which the December, 1920, income was underestimated went into the taxpayer's 1921 income. The practice followed by the taxpayer had met with the approval of the Interstate Commerce Commission. It is plain that over a course of years no prejudice could result to the government in the matter of taxes from such a practice. Counsel for the respondent has conceded that the Board erred in requiring an allocation of the amount of the underestimate to income for the year 1920. Section 212 (b) of the Revenue Act of 1918 (40 Stat. 1064), and Article III of Regulations 62 seem to require this concession, since clearly the "overlapping items do not materially distort the income," and the policy of the taxpayer with respect to them has been consistent for some twenty-five years.

## Contributions.

This question, we think, must be decided in favor of the respondent, under Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289, 55 S. Ct. 158, 79 L. Ed. ——.

## Reopening.

By section 274 (d) and (j) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 55 (26 US CA §§ 1048b, 1053), a taxpayer who has appealed to the Board of Tax Appeals may waive the assessment and collection of the whole or any part of a deficiency determined against him by the Commissioner, and thus stop the running of interest upon so much of the deficiency as is affected by the waiver.

In December, 1927, the Commissioner mailed a deficiency letter to each of the petitioners showing proposed deficiencies aggregating $409,983.43. The petitioners decided to waive their right of appeal to the Board with respect to items aggregating $238,478.03, and to consent to the assessment of that portion of the total deficiencies determined against them by the Commissioner. In February, 1928, the Kansas City Southern Railway Company, on behalf of itself and its subsidiaries, the petitioners here, sent to the Commissioner a "waiver of right to file a petition with the United States Board of Tax Appeals." The waiver was dated February 25, 1928. It was executed by the Kansas City Southern Railway Company on behalf of itself and its affiliates (the petitioners), it described the items of deficiencies as to which no appeal would be taken to the Board, specified the total amount of such items, consented to their assessment, gave the reasons for executing the waiver in consolidated form, namely, that the companies had filed consolidated returns and had filed a consolidated appeal, and concluded with these words: "The said companies reserve the right to pay said $238,478.03 under protest, and to sue to recover the same."

The Commissioner received the waiver on February 28, 1928. The taxpayer received no intimation from the Commissioner that the waiver was insufficient in either form or substance, until after August 5, 1931, when, in response to a letter written by it, the acting Commissioner advised it that the form of waiver executed by the Kansas City Southern Railway Company did not meet the requirements of section 274 (d) of the Revenue Act of 1926 (26 USCA

§ 1048b), because it was signed by "only one of the corporations involved," and that it was not possible for the Commissioner to determine the amount of the deficiency which should be assessed against any one of the corporations. After August 5, 1931, there followed correspondence between the taxpayer, the Commissioner and the General Counsel of the Bureau of Internal Revenue relative to the validity of the waiver. On July 15, 1933, the General Counsel advised the taxpayer by letter that the Commissioner's letter of August 5, 1931, relative to the insufficiency of the waiver was approved.

On September 29, 1932, the taxpayer paid to the Collector of Internal Revenue, at Kansas City, $220,441.56 to apply upon the deficiencies in taxes, exclusive of interest.

On August 1, 1933, the taxpayer petitioned the Board to reopen the proceedings to permit amendment of the pleadings and to receive evidence for the purpose of having the validity and effect of the waiver determined. The petition was denied August 8, 1933. Thereafter on October 17, 1933, the taxpayer again applied to the Board to reopen the proceedings for the purpose of enabling it to have a review of the refusal of the Commissioner to honor its waiver. This supplemental petition was denied December 9, 1933. The hearing before the Board had been held in March, 1930. The opinion of the Board was promulgated March 30, 1931, and before the taxpayer was advised by the Commissioner that its waiver would be disregarded. The order of redetermination was entered by the Board on January 31, 1934.

The reasons which the respondent now urges in justification of the Board's refusal to reopen the proceedings are: (1) That the taxpayer in the waiver inserted a reservation of the right to pay under protest and to sue to recover the tax; (2) that if the taxpayer intended to raise the question of the validity of the waiver, it should have amended its petition before or at the hearing; (3) that the taxpayer's remedy is a suit for a refund.

There is no suggestion that the Board was without jurisdiction to reopen the proceedings and to grant the taxpayer the review requested. No authority is cited by the respondent to sustain the proposition that if a taxpayer consents to the assessment of items of taxes not in dispute, but reserves the right to sue to recover the taxes paid, such reservation vitiates the consent. The taxpayer could hardly have been expected to raise the question of the validity of its waiver before it knew that the Commissioner would hold it invalid.

That the taxpayer may have a remedy in court for the recovery of the interest upon that part of the deficiency affected by its waiver would scarcely be an answer to the contention that the Board, in the exercise of a proper discretion, should have reopened the proceedings; and it is doubtful if the taxpayer, having appealed to the Board, has any such remedy. Warren Mfg. Co. v. Tait (D. C. D. Md.) 60 F.(2d) 982, 984; Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 727, 49 S. Ct. 499, 73 L. Ed. 918.

It would be inappropriate for us to pass upon the question as to whether the waiver was valid or not, since that question has not been considered by the Board. That the question is an important and a debatable one is, we think, apparent. If the waiver is valid, as the taxpayer claims, then the taxpayer has been denied a review of the Commissioner's ruling, which compels it to pay some $70,000 of interest which it does not owe the government. If the waiver is invalid, the government will be in no way prejudiced by a determination to that effect, and the Board is only injured to the extent of the time and effort required to hear the testimony and to decide the question. It seems probable that all of the facts with respect to the waiver can be stipulated, so that the burden placed upon the Board should not be an excessive one.

In hearings before the Board, as in trials before the courts, justice ordinarily requires that all of the issues growing out of a particular controversy be disposed of upon their merits, whenever that can be done. If it appeared here that the failure to present to the Board the issue relative to the waiver was due to the negligence of the taxpayer or to its failure to act with reasonable promptness, we would think that the Board was clearly within its rights in refusing to reopen the proceedings. The taxpayer, however, could not have been expected to foresee that the Commissioner would treat its waiver as a nullity, and it was in no position to raise an issue which in fact did not exist at the time of the hearing before the Board.

So far as the action of the Commissioner is concerned, we think his silence with respect to the waiver for some three and a half years was without justification or ex-

cuse. Common courtesy and ordinary regard for the rights of the taxpayer required that if either the form or substance of the waiver was not sufficient, it should have been notified to that effect. There could have been no doubt in the mind of the Commissioner, when he received the waiver, as to what the taxpayer was seeking to accomplish by sending it in. The deficiency letter which the Commissioner sent to the petitioners contained the following:

"If you acquiesce in this determination and do not desire to file a petition with the United States Board of Tax Appeals, you are requested to execute a waiver of your right to file a petition with the United States Board of Tax Appeals on the inclosed Form A, and forward it to the Commissioner of Internal Revenue, Washington, D. C., for the attention of IT:CR:RR-60D-TMM.

"In the event that you acquiesce in a part of the determination, the waiver should be executed with respect to the items to which you agree."

The taxpayer used the form referred to, with some modifications of its own.

It is true, as the respondent asserts, that the portion of the tax waived was not assessed against nor collected from the taxpayer. But the matter of assessment and collection was a matter which the taxpayer could not control, and it was not its duty to advise the Commissioner of his failure to act upon the waiver, or to assume that, because of that failure, he was going to hold that the waiver was invalid.

It is our conclusion that it would be in the interests of justice that the taxpayer have a hearing before the Board on the question of the sufficiency of the waiver. It has passed upon all the other aspects of the controversy over the tax liability of the taxpayer for the years in question, and should, we think, pass upon this one.

The language of the Supreme Court in Helvering v. Taylor, 55 S. Ct. 287, 291, 79 L. Ed. ——, opinion filed January 7, 1935, is appropriate: "The rule for which the Commissioner here contends is not consonant with the great remedial purposes of the legislation creating the Board of Tax Appeals."

We have concluded that the Board erred only with respect to the claimed restoration of undermaintenance, with respect to the overlapping item, and in its denial of the taxpayer's petition for the reopening of the proceedings for the purpose of securing a review of the question of the sufficiency of its waiver.

The case is remanded to the Board with directions to grant the petition of the taxpayer for a reopening of the proceedings, and to redetermine the taxpayer's deficiencies in income taxes in accordance with this opinion.