## WALLACE GROVES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77324. Promulgated June 4, 1937.

*Hugh Satterlee, Esq., Albert S. Lisenby, Esq.,* and *Philip Zimet, Esq.,* for the petitioner.

*John E. Marshall, Esq.,* and *Allen T. Aikin, Esq.,* for the respondent.

---

[1] It was stated by petitioner's counsel at the bar that petitioner or his brother was the principal holder of the common shares of the First Industrial Holding Corporation, and this has not been disputed, although there is no evidence of the exact ownership.

16

**OPINION.**

STERNHAGEN: 1. The Commissioner added $713,000 to the petitioner's income as "value of stock distribution", and explained this determination as follows:

1. Information on file in this office indicates that in 1930 you received from the Wagegro Corporation and/or the Firinbank Corporation 23,000 shares of Class A common stock of the Merchants and Manufacturers Securities Company without cost to you. It is held that the fair market value of this stock at the date of receipt was $31.00 per share, and your net income has accordingly been increased by $713,000.00, representing the fair market value of 23,000 shares of stock received.

This determination the petitioner assails, alleging that he did not receive the said shares and that their value was no more than $25 each, or $575,000. The value of the shares has been found from the only evidence to have been $575,000; and this the respondent no longer disputes, but expressly accepts. At the trial, respondent filed an amended answer adding an affirmative allegation:

* * * (in the alternative to his determination as set forth in the notice of deficiency) that the 23,000 shares * * * were subject to petitioner's

unfettered command on or about August 15, 1930 and he was then free to enjoy them at his own option, * * *.

Petitioner denies this in his reply.

The evidence seems to set forth all that occurred, and there is no substantial dispute as to the facts. The argument turns upon whether Groves must in the circumstances be regarded as realizing income of $575,000 in 1930 upon which he may lawfully be taxed. If so, it is of minor consequence whether he be said to have received the shares, or to have been free to enjoy them, or to have had unfettered command over them. Nor is it determinative that substance is more important than form or that corporate entities may not be disregarded or confused with their shareholders.

The matter which is difficult to treat as having jural significance is not the legal existence of any of the corporations, but the Firinbank-Groves employment contract and its assignments. When Groves, in June, made his agreement with the Securities Co. he was not under a contract of employment with Firinbank, and was individually free to contract at once with the Securities Co. to serve that corporation. By the June agreement, Article IV * * * 3, he bound himself to do this either by a direct employment contract or by procuring the assignment of an employment contract made with another corporation. Being so bound, he was then in no position to make a *bona fide* contract at arm's length to serve another corporation. Such a *bona fide* contract could only be made subject to a duty of the employer corporation to assign it, and this would have been an anomaly, for the corporation would have purported to gain the right to Groves' services and at the same time agree to assign the right. It is impossible to imagine such a contract being knowingly made by an independent corporation.

But Groves did not make a contract at arm's length. The contract which he purports to have made is with a corporation (Firinbank), of which he owned all shares and was president and which he completely controlled. While the existence of this corporation as a legal entity may not be ignored, the ownership by one person of all its shares and his resulting control is a circumstance affecting the reality or intendment of a contract between the two. Their relation makes it necessary that the contract be subjected to the most careful scrutiny. Groves' knowledge of the existing commitment to the Securities Co. must be imputed as well to the corporation, for his was the only mind it had; and it is too much to require the Government to treat the employment contract as a real and substantial creation of new rights and obligations merely because it was stated in writing and contained no provision for the specifically contemplated assign-

ment to the Securities Co. If Groves had insisted upon the Securities Co. making an employment contract directly with him, his right to it and to the 23,000 shares or their value was clear. He chose instead to make a contract with Firinbank and to have Firinbank make a contract with him, well knowing that both the contracting parties were aware of the Securities contract and indeed the whole plan. In this employment contract it is impossible to find substance, irrespective of the legal existence of the Firinbank Corporation. Cf. *Gregory* v. *Helvering*, 293 U. S. 465; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; certiorari denied, 296 U. S. 641.

The assignment of the employment contract to the Wagegro Corporation is in no better case. Greene was the shareholder and Groves held the proxy. Both knew of the Securities Co. contract, and Wagegro must, through either or both of them, have known of it when it took the assignment and turned it over to the Securities Co. for the 23,000 shares. Groves was at that time free to contract to serve the Securities Co., and receive the 23,000 shares, or have them go to such corporation as he might designate. Their going to the Wagegro Corporation must be regarded as one of those anticipatory arrangements, whereby the fruit is attributed to a different tree from that on which it grew. *Lucas* v. *Earl*, 281 U. S. 111. Therefore it was proper, despite the issuance of the shares to Wagegro, to tax Groves as if he had received them. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *Corliss* v. *Bowers*, 281 U. S. 376; see *Helvering* v. *Gordon*, 87 Fed. (2d) 663.

There is no occasion to discuss the part of the plan by which the 54,000 shares in First Industrial Bankers reached the Securities Co., and were paid for, for all the Commissioner seeks is that the $575,000 value of the 23,000 shares shall be taxed to Groves, and in this he is sustained. It might be that, looking at the entire transaction from the time of Greene's first conversation with Groves, the $575,000 should be attributed to Groves upon still other theories. But it seems sufficient, after studying the events in their entirety, to consider petitioner's case at the point where it is most vulnerable. For the reason stated, the Commissioner's determination is sustained.

2. The Commissioner disallowed a deduction of $7,000 interest, saying:

2. The deduction of $7,000.00, representing interest paid to the Wagegro Corporation, does not appear to be a proper deduction from income and has therefore been disallowed.

The evidence is all one way to support the finding that petitioner paid the amount to Wagegro as interest on an existing indebtedness, which has since been discharged. The Commissioner's determination must be reversed.

3. In the amended answer, the respondent sets up as new matter that in consideration of petitioner's entering into a contract of employment with the Firinbank Corporation he received 5,000 shares of that corporation having a fair market value of $510,000. This the petitioner denies. The issue. is not pressed in argument. As appears from the findings, the 5,000 shares were not the consideration in the employment contract, but were issued for the options and $5,000 cash. There is, therefore, no ground for respondent's contention, and it must fail.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*