The GUARANTEE TITLE AND TRUST CO., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14838.

United States Court of Appeals Sixth Circuit.

Feb. 18, 1963.

Roger K. Powell, Columbus, Ohio, for petitioner.

H. Gilmer Wells, New York City (Cadwalader, Wickersham & Taft, New York City, on the brief; Arnold J. Zurcher, Jr., Laurence Vogel, New York City, of counsel), for Bowery Savings Bank, amicus curiae.

Giora Ben-Horin, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before CECIL, Chief Judge, O'SULLIVAN, Circuit Judge, and WILLIAM E. MILLER, District Judge.

WILLIAM E. MILLER, District Judge.

This case comes before us on the petition of the Taxpayer, The Guarantee Title & Trust Company, an Ohio corporation, to review the decision of the Tax Court that the Taxpayer was required to accrue as income for federal income tax purposes, as of the end of its taxable years 1955 and 1956, certain amounts reflected on its books in excess of the compensation actually paid to it in those years by The Bowery Savings Bank pursuant to a mortgage servicing contract.

The Bowery, a mutual savings institution located in New York City, invests in mortgage loans on real estate. Its practice is to enter into a mortgage servicing contract with a mortgage company, such as the Taxpayer, under which the mortgage company agrees to perform the usual services in connection with the servicing of the mortgages. These services consist of the collection

of payments due from the mortgagor, seeing that taxes are paid and insurance coverage maintained, the remission of funds collected to The Bowery, and general supervision of the mortgagor's performance under the mortgage. The mortgage company for its services is compensated on the basis of monthly servicing fees at rates agreed upon in the servicing contract. The Bowery in its amicus curiae brief suggests two methods used in the industry for fixing the amount of these monthly fees. One method is to compensate the mortgage company by a fee based upon a fixed percentage of the principal amount of the mortgages being serviced and outstanding from month to month. Referred to as "basic rate compensation," this formula would obviously result in a constantly diminishing amount being paid to the mortgage company over the life of the mortgages, since the fee represents a percentage of the monthly outstanding principal balances of the mortgages being serviced. In consequence, as pointed out by The Bowery, in the later years of the mortgages monthly compensation received by the mortgage servicing contractors would necessarily become relatively small, although it would be safe to assume that the expenses to the mortgage company in performing the necessary services would remain fairly constant throughout the entire life of the mortgages notwithstanding the amortization of the outstanding principal balances. Another method is the "level payment" plan of compensation under which the servicing contractor is compensated at a "level payment" rate of so many cents per one thousand dollars of effective principal amount of the mortgages being serviced. The mortgage company would receive a uniform monthly fee over the entire life of the mortgage loan rather than a constantly diminishing amount.

A servicing contract was entered into between the Taxpayer and The Bowery on February 18, 1954. Under this contract, the Taxpayer agreed to service all mortgages purchased by The Bowery from it or referred to it for servicing, and to perform the specific services described in the contract. The actual mortgages serviced under the contract were purchased by The Bowery from the Taxpayer pursuant to so-called "commitment letters," the chief purpose of which was to serve as a contract by Bowery to purchase the mortgages set forth therein for an agreed price. The commitment letters provided that the mortgages so purchased should be serviced by the mortgage contractor under and subject to the existing servicing contract.

During the years 1955 and 1956, the Taxpayer serviced several mortgages for The Bowery under its contract of February, 18, 1954, for which the Taxpayer received total compensation in 1955 of $5,681.98, and in 1956 of $17,254.67. On its books the Taxpayer established an asset account described as "Accounts Receivable—Bowery Savings Bank," and a liability account described as "Deferred Credit—Mortgage Servicing—Bowery." Equal amounts were debited to one and credited to the other; and to these accounts the Taxpayer debited and credited the excess of servicing fees which would have been payable at the basic rate over the amount of level payment compensation actually received. These accounts disclosed increases of $2,965.32 and $10,389.88, respectively, for the years 1955 and 1956. The Taxpayer filed its federal income tax returns and kept its books of account upon the accrual method of accounting during 1955 and 1956. It reported as income only those amounts of level payment compensation received by it in 1955 and 1956. The Commissioner of Internal Revenue added to the Taxpayer's income the increases for these years reflected on the books of the Taxpayer, determining that such amounts were properly accrued by it in the taxable years.

In approving this ruling of the Commissioner the Tax Court, in our opinion, misconstrued the contract of February 18, 1954. Pertinent provisions of the servicing contract dealing with compensation are contained in paragraphs 3

and 4 which are set forth in the appendix.

As we construe these provisions, the contract is one which essentially provides for the level payment plan of compensation. Under its terms the only absolute and unconditional right which vested in the Taxpayer during the taxable years with respect to compensation, was the right to be compensated at the level payment rate based upon the effective principal amount of each mortgage. During those years the right to receive any amount of compensation in excess of the level payments actually made was subject to the occurrence of certain conditions precedent, including prepayment in full of the loan, foreclosure, assignment by the mortgagee, or any other event giving rise to termination without cause. If the loan being serviced should run its normal course to maturity, or if the contract should be terminated for cause as a result of the occurrence of one of the events specified in paragraph 4 of the contract, the Taxpayer is entitled only to the level payments theretofore received by it. Additional compensation in excess of the level payment rate is provided for in paragraph 3(d) (i) of the contract. If servicing of a particular mortgage should be terminated by one of the events specified therein, the Taxpayer would become entitled *at that time* to "additional compensation" in an amount equal to the excess of compensation which would have been payable to that date under the basic rate over the level payment compensation already received. The Taxpayer would be required, on the other hand, to repay the excess to The Bowery in such event if the level payment compensation exceeded compensation at the basic rate. We are unable to escape the conclusion that the Taxpayer's right to any amount in addition to the level payments received was at all times contingent upon the occurrence of the specified conditions precedent.

It may be conceded, as pointed out by the Tax Court and by the Commissioner, that if a particular mortgage runs its full term, the basic rate compensation and the level payment rate would produce the same total amount. But the test is not the amount received by the Taxpayer upon completion of the servicing of the mortgage, but the nature and character of its right during *the taxable years*. We find that its only fixed and accrued right during those years was to receive compensation at the level payment rate.

It is well settled under such circumstances that there can be no accrual. As stated by the Supreme Court in the leading case of Spring City Foundry Co. v. Commissioner, 292 U.S. 182 at pp. 184–185, 54 S.Ct. 644, at p. 645, 78 L.Ed. 1200:

> "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." (Emphasis supplied by the Court.)

If the right to receive income is contingent upon the happening of a future event, the right cannot be said to arise or exist in the taxable year to be accounted for as income under the accrual method of accounting. Bauer Bros. Co. v. Commissioner of Internal Revenue, 46 F.2d 874 (C.A.6, 1931), cert. denied 283 U.S. 850, 51 S.Ct. 560, 75 L.Ed. 1458; Commissioner of Internal Revenue v. R. J. Darnell, Inc., 60 F.2d 82 (C.A.6, 1932); Franklin County Distilling Co. v. Commissioner of Internal Revenue, 125 F.2d 800 (C.A.6, 1942); Cappel House Furnishing Company v. United States, 244 F.2d 525 (C.A.6, 1957); Schaeffer v. Commissioner of Internal Revenue, 258 F.2d 861 (C.A.6, 1958), cert. denied 360 U.S. 917, 79 S.Ct. 1435, 3 L.Ed.2d 1533. So in this case, the Taxpayer was required to account only for the level payment compensation actually received during the taxable years. The contract provides for no other compensation for current servicing of mortgages. The Tax Court, in stating that the typical com-

228

mitment letter specifically provides that the petitioner is to receive compensation at the basic rate and mentions no other possibility, fails to take into account the fact that the servicing contract is the underlying instrument providing for compensation to the Taxpayer and that the commitment letter itself, while mentioning the basic rate, refers to the servicing contract to fix the exact terms of compensation. We do not consider that the commitment letter in any way alters or modifies the controlling provisions of the servicing contract pertaining to compensation.

Nor do we regard it as of significance that the Taxpayer created an asset account and a corresponding liability account on its books reflecting the amounts by which its compensation, if computed on the basic rate, would have exceeded the compensation it received at the level payment rate. The Bowery also maintained on its books an account to which it credited the excess thus computed. These bookkeeping entries might be of some significance in indicating the intention of the parties if the contract in question were ambiguous or uncertain in meaning. But we do not regard the contract here in question as ambiguous on the point under consideration. Even if it should be so regarded, any effect of these entries as reflecting intent would appear to be largely offset by the fact that the Taxpayer did not treat the amount on its books as income for tax purposes, nor did the Bowery treat the same amount on its books as accrued expense and has never claimed a deduction for such amount for income tax purposes. The entries were apparently made solely for the internal accounting purposes of the parties.

The Commissioner's reliance upon the "dealer's reserve" cases, of which Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360, is the leading example, is, in our opinion, misplaced. The rationale of this case and others of like import is that the amounts retained by the finance company in a "dealer's reserve"

account must be used in all events to satisfy the obligations of the dealer. The amounts so held are part of the purchase price which the dealer had a fixed right to receive. It is immaterial that because of a future contingency the dealer might never receive the amount of the reserve in cash, since it must be applied to discharge the dealer's legal obligation. Cf. Opinion of Judge Shackelford Miller, Jr. in Schaeffer v. Commissioner of Internal Revenue, supra, 258 F.2d 861. Under the income tax law the payment of a legal obligation of a taxpayer constitutes taxable income. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918.

In accordance with the views herein set forth the decision of the Tax Court is,

Reversed.

## APPENDIX

3. *Compensation of the Contractor.*

(a) *Method of Computation.* The monthly compensation of Contractor with respect to each mortgage shall be computed as follows:

For each One Thousand Dollars ($1,000) of effective principal amount (as hereinafter defined) of such mortgage, the Contractor shall receive an amount equal to the level payment rate set opposite the applicable basic rate (as hereinafter defined) in the following table:

| Basic Rate of Compensation | Level Payment Rate per $1,000 of Effective Principal Amount |
| --- | --- |
| $\frac{1}{5}$ of 1% | 10 cents |
| $\frac{1}{4}$ of 1% | 12$\frac{1}{2}$ cents |
| $\frac{3}{8}$ of 1% | 18$\frac{3}{4}$ cents |
| $\frac{1}{2}$ of 1% | 25 cents |
| $\frac{5}{8}$ of 1% | 31$\frac{1}{4}$ cents |
| $\frac{3}{4}$ of 1% | 37$\frac{1}{2}$ cents |

For the purposes of this agreement, the applicable basic rate of compensation shall be (i) in the case of a mortgage purchased from Contractor, the basic rate specified in the commitment letter between Bowery

and Contractor pursuant to which such mortgage was acquired (or the servicing agreement under which such mortgage was heretofore serviced) and (ii) in the case of a mortgage purchased from a seller other than Contractor, such basic rate as shall be agreed to by Bowery and Contractor or the rate specified in the servicing agreement under which such mortgage was heretofore serviced.

Notwithstanding the foregoing provisions of this paragraph 3(a), any mortgage closed pursuant to Bowery Commitment No. 76609 and No. 79234 shall not be subject to level payment compensation until September 30, 1958 or four (4) years from the expiration date of said commitments, whichever is later. Prior to said date, the Contractor shall deduct and retain its compensation from collections of interest made by it. The effective principal shall be the principal outstanding as of the aforementioned date or as of the date a mortgage becomes subject to level payment compensation.

(b) *Method of Payment.* Contractor shall submit monthly bills (on forms prescribed by Bowery) to Bowery for the compensation payable pursuant to the foregoing subparagraph with respect to all mortgages being serviced hereunder and Bowery shall promptly verify and pay the same to Contractor. Such compensation shall not be deducted by Contractor from moneys collected by it.

Compensation computed in accordance with subparagraphs (a) and (b) of this Paragraph 3 is hereinafter sometimes called "level payment compensation."

(c) *Mortgages Held by the Life Insurance Department of the Bowery.* * * *

(d) *Adjustments in Compensation.*

(i) *In case of termination.* If and whenever any of the following events shall occur, viz.:

(a) any mortgage shall be prepaid in full, or

(b) any mortgage shall be foreclosed or the property subject thereto shall be acquired by Bowery without foreclosure, or

(c) this agreement shall be cancelled by Bowery as to any or all of the mortgages, with or without cause,

(d) Contractor surrenders and relinquishes charge of any mortgage pursuant to Paragraph 1(1) hereof,

Contractor's right to compensation for servicing any such mortgage shall forthwith cease, except as hereinafter provided.

In any of the foregoing events, if (i) the aggregate level payment compensation received by Contractor in respect of any such mortgage from the date of commencement of servicing hereunder (or under any prior agreement between the parties hereto) to the date of occurrence of such event shall exceed (ii) the aggregate compensation for such period which Contractor would have received in respect of such mortgage at the applicable basic rate of compensation on actual monthly principal balances thereof, Contractor shall, out of its own funds, forthwith pay to Bowery an amount equal to such excess.

In any of the foregoing events (except cancellation of this agreement pursuant to Paragraph 4 hereof) if (i) the aggregate compensation which Contractor would have received in respect of any such mortgage for the period specified in the preceding sentence at the applicable basic rate of compensation on actual monthly principal balances thereof exceeds (ii) the aggregate level payment compensation which Contractor has received during such period in respect of such mortgage, Bowery will forthwith pay to Contractor as additional compensation hereunder the amount of such excess.

(ii) *In case of assignment.* Anything herein to the contrary notwithstanding, upon the assignment of any mortgage by Bowery, Bowery

may at its option elect to require an adjustment as if such mortgage so assigned were then prepaid in full. If Bowery's assignee shall elect to continue the servicing of such mortgage hereunder, Contractor's compensation with respect to such mortgage thereafter shall (i) be at the applicable basic rate of compensation based on the outstanding principal balances of such mortgages from time to time, and (ii) be retained by the Contractor from moneys collected by it each month in respect of such mortgage, unless a different arrangement shall be agreed to by such assignee and Contractor.

(iii) *In case of split-service rate arrangement.* * * *

A. * * *
B. * * *
C. * * *
D. * * *

4. *Termination for Cause.*

If any of the following events shall occur, i. e.

(a) Contractor shall assign or attempt to assign or delegate its rights or its duties hereunder, or

(b) Contractor shall merge with or consolidate into any other corporation without the prior written consent of Bowery, or

(c) Contractor shall sell or otherwise dispose of all or substantially all of its property and assets without the prior written consent of Bowery, or

(d) there shall occur (without the prior written consent of Bowery) any change in the stock ownership of Contractor, the effect of which shall be that effective voting control of Contractor shall pass from the persons now exercising such control to others, or

(e) any representation or warranty of Contractor hereunder shall be found to be untrue or any representation or warranty contained in subparagraphs (a) or (b) of Paragraph 9 shall at any time cease to be true, or

(f) Contractor shall institute proceedings for voluntary bankruptcy, or shall file a petition seeking reorganization under the Federal Bankruptcy Laws or for relief under any other law for the relief of debtors, or shall consent to the appointment of a receiver of all or substantially all of its property, or shall make a general assignment for the benefit of its creditors, or shall admit in writing its inability to pay its debts as they become due, or shall be adjudged a bankrupt or insolvent by a court of competent jurisdiction, or if an order shall be made by a court of competent jurisdiction appointing a receiver, liquidator or trustee of Contractor or of all or substantially all of its property or approving any petition filed against Contractor for its reorganization, and such adjudication or order shall remain in force or unstayed for a period of twenty days, or

(g) Contractor shall otherwise become incapacitated by operation of law or fact for the faithful performance of its duties pursuant to the terms of this agreement, or

(h) Contractor shall fail to perform any of its duties hereunder or under any other agreement between Bowery and Contractor and shall fail, within fifteen days after written notice from Bowery, to correct or cure such failure,

then in such event the rights and duties of Contractor and its right to compensation hereunder shall, at the option of Bowery, immediately terminate and thereupon Contractor shall forthwith deliver to Bowery (A) all documents relating to all mortgages being serviced hereunder, including but not limited to ledger cards, tax bills, accrual records and hazard insurance policies and (B) a statement showing the monthly payments by it collected and a statement of all moneys held in trust by it for the payment of maintenance and other charges in respect of each and all of the mortgages and shall immediately pay over to Bowery all moneys so held.