*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0404p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MAS ONE LIMITED PARTNERSHIP,

> *Plaintiff-Appellant,*

v.

No. 03-4188

UNITED STATES OF AMERICA,

> *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00087—Algenon L. Marbley, District Judge.

Argued: October 29, 2004

Decided and Filed: November 19, 2004

Before: KENNEDY and GILMAN, Circuit Judges; HOOD, District Judge.*

---

## COUNSEL

**ARGUED:** Terrence A. Grady, TERRENCE A. GRADY & ASSOCIATES CO., Columbus, Ohio, for Appellant. Teresa E. McLaughlin, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Terrence A. Grady, TERRENCE A. GRADY & ASSOCIATES CO., Columbus, Ohio, for Appellant. Teresa E. McLaughlin, Joel L. McElvain, DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Mas One Limited Partnership borrowed $14.5 million in order to build an office building in Clearwater, Florida. Five years later, Mas One's sole limited partner abandoned its interest in the partnership and paid the remaining principal balance of the loan in order to obtain a release from its Debt Service Guaranty Agreement. Mas One listed this payment on its federal income tax return as a nontaxable capital contribution. The Internal Revenue Service issued a notice disallowing this treatment, prompting Mas One to challenge the IRS in court. After both parties filed cross-motions for summary judgment, the district court ruled in favor of the United States. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

*The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I. BACKGROUND

Mas One is an Ohio limited partnership that was organized in 1986 with two partners. One was Mas One Generals, the general partner, and the other was Midland Mutual Life Insurance Company, the limited liability partner. Midland and the Generals each held a 50 percent interest in Mas One. The partnership agreement stipulated that gains and losses were to be generally allocated in proportion to each parties' ownership interest. Any gains from the sale of Mas One property, however, were to be allocated first to partners with negative balances, while any such losses were to be allocated first to partners with positive balances.

In November of 1989, Mas One entered into an agreement to construct and operate an office building in Clearwater, Florida, to be called the Clearwater Tower. A third-party lender, Huntington National Bank, financed the investment with a $14.5 million loan. Mas One agreed to make monthly interest payments and, upon the Clearwater Tower's substantial completion, to pay $2.5 million toward the loan's principal balance. The remainder of the loan was to be repaid in 1994, with monthly interest being paid in the interim.

Two guaranty agreements were signed along with the promissory note. One agreement (the Principal Reduction Guaranty) stipulated that Midland would guarantee the $2.5 million substantial-completion principal payment if it was not "paid promptly when due." The other agreement (the Debt Service Guaranty) provided that Midland would guarantee the monthly interest payments in the event that Mas One failed to make the payments in a timely manner.

When Mas One was unable to timely pay many of the monthly interest payments on the loan, Midland honored its obligation under the second of the two guaranty agreements. Midland also made the $2.5 million payment on the loan principal in 1991, when the Clearwater Tower was substantially completed. In 1994, the note matured and the principal balance became due. Midland then decided to abandon its involvement in both Mas One and the Clearwater Tower. Pursuant to a memorandum dated December 15, 1994, Midland notified Mas One of its intent to abandon the partnership. The memorandum also stated that it would pay Huntington for "a release of the Huntington mortgage." On December 28, 1994, Midland paid the Generals $185,000 as consideration for abandoning the partnership. The Clearwater Tower was sold the next day, December 29, 1994, for $4.1 million. Midland immediately paid the balance of the Huntington loan by making a payment of $8.3 million and assigning to Huntington the $4.1 million proceeds from the building's sale. An agreement was executed between all of the parties that released each from future liability arising out of the Huntington loan.

In its 1994 federal income tax return, Mas One listed the $8.3 million paid by Midland to Huntington as a nontaxable capital contribution to the partnership. It listed a gross sale price for Clearwater Tower of $4.1 million and an adjusted basis of $11.4 million. Mas One thus claimed a net loss of $7.3 million on the sale of the Clearwater Tower.

The IRS issued a notice of "final partnership administrative adjustment" pursuant to I.R.C. § 6223, challenging this treatment. It contended that Mas One had in fact realized $8.3 million in ordinary income upon the payment by Midland of Mas One's obligation under the promissory note. The IRS further argued that if the payment was indeed a capital contribution, then the $7.3 million loss on the Clearwater Tower should all be allocated to Midland, since Midland was the only Mas One partner with a positive capital account.

Mas One filed a timely complaint in the district court, arguing that its original tax treatment was correct and that Midland's payment was a nontaxable capital contribution. Both parties filed cross-motions for summary judgment. The district court rejected Mas One's argument and entered summary judgment in favor of the United States. This timely appealed followed.

## II. ANALYSIS

### A.      Standard of review

The district court's grant of summary judgment is reviewed de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

### B.      The nature of Midland's payment

Mas One contends that the amount paid by Midland to Huntington does not constitute gross income to Mas One and is instead a nontaxable capital contribution. Because Midland was a Mas One partner throughout the negotiations to sell the property, Mas One argues that the payment should be considered as a capital contribution to the partnership. Mas One also claims that the payment falls under the statutory nonrecognition provision of I.R.C. § 721(a), which provides that gains or losses will not be "recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." Each of these arguments is discussed below.

#### 1. The realization of income

Gross income is "all income from whatever source derived." I.R.C. § 61(a). The Supreme Court has held that included within this definition of income is money coming from a third party in payment of a debt owed by the taxpayer. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 729 (1929) ("The discharge by a third person of an obligation to [the taxpayer] is equivalent to receipt by the person taxed."). As this court has noted, "[u]nder the income tax law the payment of a legal obligation of a taxpayer constitutes taxable income." *Guarantee Title & Trust Co. v. Commissioner*, 313 F.2d 225, 228 (6th Cir. 1963). None of the parties dispute the principle that when a third party pays the debt of the taxpayer, the taxpayer has realized income.

But the agreement ends there. Mas One submits that, first, Midland "was not some unrelated party, but was connected to the Partnership in its partnership capacity." Because Midland is not an unrelated party, Mas One argues, "the payment cannot constitute forgiveness of debt income to the Partnership." But this argument is unsupported, both legally and factually. Mas One cannot point to a single authority for the proposition that, by virtue of an ambiguous "relationship," *Old Colony* does not apply. To the contrary, many cases have held that an indebtedness paid by a third party to satisfy a taxpayer's obligation is realized income to the taxpayer notwithstanding a close relationship between the two. *See, e.g.*, *Diedrich v. Commissioner*, 457 U.S. 191 (1982) (finding the realization of income to the parents when their children agreed to pay the gift tax on a bequest made by the parents); *Tenn. Secs., Inc. v. Commissioner*, 674 F.2d 570 (6th Cir. 1982) (finding the realization of income to the parent corporation when its subsidiary paid the balance on a loan owed by the parent).

Midland, moreover, was a legally independent party at the time of the payment to Huntington. It had terminated its relationship with Mas One the day before the payment was made as part of a deliberately planned series of transactions. One of Mas One's lawyers admitted that "[i]t was my understanding that both the closing of the Midland-Huntington loan payoff transaction and the closing of the . . . purchase of the Clearwater Tower were to occur after the closing of the [partnership] restructuring."

Despite the principle that the "substance of the transaction will govern, rather than its form," Treas. Reg. § 1.721-1(a), the reasoned steps taken by the parties to legally separate before the payment was made

cannot be ignored. The Supreme Court has repeatedly recognized that although "a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (internal citations omitted). In the present case, we see no reason to disregard the very specific timeline established by the parties.

Mas One next argues that Midland "was obligated to pay the debt in its partnership capacity and pursuant to the Debt Service Guaranty Agreement." This argument, if true, would be persuasive, because *Old Colony* is applicable only where there is a "discharge by a third person of an *obligation to [the taxpayer.]*" *Old Colony Trust Co.*, 279 U.S. at 729 (emphasis added). If Midland had the obligation, and not Mas One, to pay the principal of the Huntington loan, then *Old Colony* and its progeny would not control the tax treatment in this case.

The facts, however, belie Mas One's argument. Midland was under no obligation to make the $8.3 million payment to Huntington. The two guaranty agreements, which were the only provisions binding Midland with regard to the loan, limited the company's obligations to making the monthly interest payments and the $2.5 million substantial-completion principal payment. Both of these payments, moreover, were due only in the event that Mas One failed to make those payments itself. Nothing in the original promissory note or the two guaranty agreements obligated Midland to pay the entire principal balance of the loan. To the contrary, the promissory note is clear in that the obligation to pay the loan balance upon maturity belonged solely to Mas One.

Mas One, however, argues that Midland's obligation to pay the loan balance should be inferred from the payment itself. "[N]o person or organization, particularly not a sophisticated insurance company, is going to make a payment in the very substantial amount of $8.3M unless it believes it is obligated to do so." We find this argument unconvincing. The negotiations surrounding Midland's abandonment of the Clearwater Tower project were complex, and we have no need to explore the cost-benefit analyses performed by each party. Suffice it to say that Midland had other options and considerations, but chose to pay Mas One's obligation quickly in order to relieve itself of the Debt Service Guaranty by the end of the calendar year in question. The fact that it was not legally obligated to do so means that *Old Colony* is applicable.

Mas One further argues that the Debt Service Guaranty, which obligated Midland to make monthly interest payments indefinitely, was tantamount to a guarantee by Midland of the total loan balance. But this analysis ignores the fact that the Generals, the entity that had unlimited liability for Mas One's obligations, was the group that in effect guaranteed the repayment of the loan. Had Midland not paid the principal balance when it did, the responsibility for paying the balance would have fallen to the individual members of the Generals. We thus conclude that Midland's obligation was not equivalent to a guarantee to pay the loan balance.

In sum, Mas One was the only party contractually bound to pay the principal balance on the Clearwater Tower laon, and it was freed from this obligation when Midland made the $8.3 million payment as a means to terminate its Debt Service Guaranty. This payment therefore constituted ordinary income to Mas One under the tax-law principle enunciated in *Old Colony*.

### 2.     *Mas One's § 721(a) argument*

Mas One's alternative contention is that, even if the $8.3 million would otherwise be considered as ordinary income, I.R.C. § 721(a) is applicable. That section states that "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." *Id.* Mas One argues that the $8.3 million payment was a "contribution of property to the partnership in exchange for an interest in the partnership," so that the payment should not be recognized as ordinary income.

In support of its assertion, Mas One points to the principle that the "substance of the transaction will govern, rather than its form." Treas. Reg. § 1.721-1(a). It thus asks us to ignore the fact that Midland's partnership with Mas One was effectively severed *before* the payment to Huntington took place. Midland, it argues, was still Mas One's partner when the agreement to make the payment was made, even if not at the time of actual payment.

Mas One's argument fails as a matter of law. First, as noted above, the parties purposefully severed Midland's relationship with Mas One before the payment to Huntington took place. They specifically and deliberately set the dates to effectuate the business interests of those involved. As stated before, a "taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice." *Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974).

Mas One is correct when it points out that Midland agreed to make the payment to Huntington while still a partner. But this fact alone does not make § 721(a) applicable. Section 721(a) applies only "in the case of a contribution of property to the partnership in exchange for an *interest in the partnership*." (Emphasis added.) As the district court noted, no partnership interest was at issue when Midland paid the principal balance to Huntington. Midland at that point was looking to abandon its interest in Mas One completely, not to invest further in the partnership.

The IRS relies on the Tenth Circuit decision in *Twenty Mile Joint Venture, PND, Ltd. v. Commissioner*, 200 F.3d 1268 (10th Cir. 1999), as direct support for its argument regarding § 721(a). In that case, a commercial bank served as a successor to a partner-lender in several property-buying partnerships. Uninterested in investing in a declining real estate market, the bank agreed to forgive approximately $5 million of debt in exchange for the immediate repayment of the remaining balance. It then relinquished its interest in the partnerships. The Tenth Circuit noted that the transaction constituted a discharge of the partnerships' indebtedness, and refused to hold that § 721(a) was a bar to the recognition of this income. "The reality of the situation was that [the departing partner] wanted to disassociate itself entirely from the partnerships, not to contribute to their capital." *Id.* at 1278.

Mas One attempts to distinguish *Twenty Mile* from the facts of the present case because, in *Twenty Mile*, the bank was the primary lender in addition to being a partner. We find this distinction unpersuasive. The thrust of *Twenty Mile*, as in the present case, is the fact that the departing partner received no additional "interest in the partnership," as required for § 721(a) to be applicable. In this key sense, *Twenty Mile* and the present case are legally indistinguishable.

In sum, we conclude that § 721(a) does not prevent the IRS from treating the payment by Midland of Mas One's indebtedness as income to Mas One. Because Mas One cannot point to any other nonrecognition provision, this income must be recognized.

## C.     Allocation of loss

The government argues, alternatively, that even if we were to conclude that income to Mas One was not realized on account of Midland's payment of the Huntington loan, Mas One still improperly listed the payment as a capital contribution. It argues that, as the only partner with a positive balance, Midland was entitled under the partnership agreement to claim the entire loss on the sale of the Clearwater Tower. In light of our conclusion that Mas One realized income from Midland's payment of the debt, however, we have no need to consider the merits of this argument.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.