Mrs. Bessie S. **BIEDENHARN**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 12965, 12966.**

United States District Court
W. D. Louisiana,
Monroe Division.

June 9, 1969.

Paul K. Kirkpatrick, Jr., Hudson, Potts & Bernstein, Monroe, La., for plaintiff.

Jerry A. Wells, Tax Division, Dept. of Justice, Fort Worth, Tex., Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the Government.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

BEN C. DAWKINS, Jr., Chief Judge.

The above-entitled and numbered actions having been consolidated and tried to the Court without jury, and after hearing arguments and considering the briefs of counsel, we hereby make the following Findings of Fact and Conclusions of Law as required by Rule 52(a), F.R.Civ.P.:

### FINDINGS OF FACT

#### I.

Plaintiff, Mrs. Bessie S. Biedenharn, is a citizen of the United States and a resident of Monroe, Louisiana.

#### II.

Plaintiff's husband, Henry A. Biedenharn, Sr. (decedent), died March 20, 1961.

#### III.

At the date of his death, decedent was president of both Ouachita Coca-Cola Bottling Company, Inc. (Ouachita) and Biedenharn Realty Company, Inc. (B.R. C.). During the year 1960, decedent had received a salary of $1,250 per month, as president of Ouachita; and a salary of $883.33 per month, as president of B.R.C.

#### IV.

April 25, 1961, identical resolutions were passed by the boards of directors of Ouachita and B.R.C. They read:

"BE IT RESOLVED, that as a material expression of sympathy and affection to Bessie S. Biedenharn, widow of Henry A. Biedenharn, there shall be paid to Bessie S. Biedenharn, personally, for a period of twelve months, an amount equal to that which would have been paid to Henry A. Biedenharn had he lived."

#### V.

April 25, 1961, the officers and directors of Ouachita and B.R.C. were identical. The name of each director, his office held, and relationship to plaintiff are as follows:

| NAME | RELATIONSHIP | OFFICE |
| --- | --- | --- |
| Henry A. Biedenharn, Jr. | Son | Secretary, Director |
| Bernard Biedenharn | Bro.-in-law | Vice Pres., Director |
| Emma Louise Biedenharn | Sister-in-law | Director |
| Clarence D. Oakley, Jr. | Husband of niece of plaintiff's deceased husband | Director |

#### VI.

April 25, 1961, all of the stock in Ouachita and B.R.C. was held by members of the Biedenharn family, or close relatives.

#### VII.

During the year 1961, pursuant to the resolutions set forth in Paragraph IV above, nine monthly payments of $1,250 and $883.33 each were made to plaintiff by Ouachita and B.R C., respectively.

### VIII.

During the year 1962, pursuant to the resolutions set forth in Paragraph IV above, three monthly payments of $1,250 and $883.33 each were made to plaintiff by Ouachita and B.R.C., respectively.

### IX.

April 15, 1962, plaintiff filed a federal income tax return for the calendar year 1961, for herself and decedent. This return reported $35,113.51 as taxable income. The resultant tax of $11,956.76 was covered by pre-payments of $16,-347.94, with the result that a refund of $4,091.18 was claimed and made by I.R.S. April 13, 1965, plaintiff filed a claim for refund stating that $11,250 in payments received by her from Ouachita and $7,500 in payments received from B.R.C. were improperly included as gross income for the calendar year 1961. Plaintiff claimed a refund of $6,538.63. Notice of disallowance by the Commissioner of Internal Revenue of the refund claim was issued September 8, 1965.

### X.

April 15, 1963, plaintiff filed her federal income tax return for the calendar year 1962. The return reported $29,-318.09 as taxable income. The resulting tax of $11,088.13 was covered by prepayments of $9,512.54 and a final payment of $1,575.59. March 14, 1966, plaintiff filed a claim for refund stating that $3,750 in payments received from Ouachita and $2,500 received from B.R.C. were improperly included as gross income for the calendar year 1962. Plaintiff claimed a refund of $3,653.69. Notice of disallowance of this claim was issued September 14, 1966. These suits for refund were filed June 12, 1967, tried October 12, 1968, and submitted on briefs to be filed according to a schedule fixed by the Court, the last brief having been submitted on March 14, 1969.

### XI.

The sole issue presented by these undisputed facts is whether the transfers made to plaintiff pursuant to the resolutions quoted were "gifts" within the meaning of 26 U.S.C. § 102(a),[1] as construed by Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S. Ct. 1190, 4 L.Ed.2d 1218 (1960), and thus excludable from gross income.

### XII.

Factors favoring inclusion are:

(a) Plaintiff had no financial need for the payments.

(b) On their income tax returns, the corporations deducted these payments as "other deductions."

(c) The amounts of the payments were measured by the salaries earned by decedent prior to his death.

(d) Control of both corporations was within the family of decedent.

(e) In 1955, Ouachita had established a retirement plan for its officers. Of the officers, only decedent was not eligible for coverage under the plan because he was above the maximum age limit at that time.[2]

### XIII.

Factors supporting exclusion are:

(a) At the time of decedent's death, neither corporation was legally obligated to pay him or his widow anything.

(b) During decedent's lifetime, he was fully compensated for the work he did for the two corporations.

---

1. *"General Rule.*—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

    26 U.S.C. § 61, in pertinent part, provides:

    *"(a) General Definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * *."

2. In 1950, upon the death of decedent's brother, Malcolm S., his widow had received payments similar to those made to plaintiff here.

(c) At trial, three of the directors, Bernard W. Biedenharn, C. D. Oakley, Jr., and Emma Louise Biedenharn,[3] testified that in passing the April 25, 1961, resolutions, they were not moved by a feeling of moral obligation; rather, their testimony[4] was that they were moved strictly by generosity, affection, admiration, and like impulses toward plaintiff, widow of the deceased.

(d) By the language of the resolutions themselves, the payments were made "as a material expression of sympathy and affection" to plaintiff.

(e) At trial, Bernard, Emma Louise, and Oakley[5] testified that the retirement plan had nothing whatsoever to do with the passage of the two resolutions.

### XIV.

The dominant and totally overriding motives for passage of the resolutions and the subsequent payments made to plaintiff were those expressed by the directors in their testimony. The payments were not made for services rendered by plaintiff or deceased. They were not made to discharge any moral obligation; nor did the corporations anticipate any economic benefit from making the payments.

Our primary reason for this holding is our firm conviction that the directors were completely honest and sincere in their testimony, as reinforced by their recorded actions.

### CONCLUSIONS OF LAW

#### I.

These suits, for recovery of income taxes and interest thereon assessed and collected pursuant to the Internal Revenue laws of the United States, are within the jurisdiction of this Court. 28 U.S.C. § 1346(a) (1).

#### II.

Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190 (1960), controls determination of whether the payments made to plaintiff, pursuant to the resolutions by the two corporations, were "gifts" within the meaning of 26 U.S.C. § 102(a). There the Court declared:

"The course of decision here makes it plain that the statute does not use the term 'gift' in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntarily executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner [of Internal Revenue,] 279 U.S. 716, 730, 49 S.Ct. 499, 504, 73 L. Ed. 918. And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature, Bogardus v. Commissioner [of Internal Revenue,] 302 U.S. 34, 41, 58 S.Ct. 61, 65, 82 L.Ed. 32, it is not a gift. And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' Robertson v. United States, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237. A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosi-

---

3. See, also, page 4 of the deposition of Henry A. Biedenharn, Jr., the other director.

4. See the further testimony contained in the deposition of Henry A. Biedenharn, Jr., especially at pages 4 and 16.

5. Henry A. Biedenharn, Jr., was not deposed on this point.

ty,' Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 1142; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, supra, 343 U.S. at page 714, 72 S.Ct. [994.] And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention.' Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 43, 58 S.Ct. 61, 65, 82 L.Ed. 32. 'What controls is the intention with which payment, however voluntary, has been made.' *Id.*, 302 U.S. at page 45, 58 S.Ct. [61] (dissenting opinion).

"The Government says this 'intention' of the transferor cannot mean what the cases on the common-law concept of gift call 'donative intent.' With that we are in agreement, for our decisions fully support this. Moreover, the *Bogardus* case itself makes it plain that the donor's characterization of his action is not determinative—that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S., at page 40, 58 S.Ct. 61. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter.

"It is suggested that the *Bogardus* criterion would be more apt if rephrased in terms of 'motive' rather than 'intention.' We must confess to some skepticism as to whether such a verbal mutation would be of any practical consequence. We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer. * * *

\* \* \* \* \* \*

"\* \* \* The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors.

\* \* \* \* \* \*

"\* \* \* the question here remains basically one of fact, for determination on a case-by-case basis."

### III.

In view of our Findings in Paragraph XIV above, we hold that the guiding and controlling criteria set forth in *Duberstein* fully have been met here, requiring a ruling that the payments made here indeed were "gifts" within the meaning of 26 U.S.C. § 102(a).

### JUDGMENT

For the reasons set forth in our Findings of Fact and Conclusions of Law, it, therefore, is ORDERED, ADJUDGED, AND DECREED that plaintiff do have and recover judgment against defendant for the sums erroneously collected from plaintiff as set forth in our Findings and Conclusions, with interest at the rate provided by law, from the date of the respective payments, with no costs assessed against plaintiff.